## CHARLESTON.

DAVID EAGLE *v.* I. H. McKOWN *et als.*

(No. 5836)

Submitted February 21, 1928.    Decided February 28, 1928.

1.  HUSBAND AND WIFE—TRUSTS—*Wife, Whose Money Was Paid*
    *for Land, Accepting Deed to Her and Husband Jointly,*
    *With Understanding That Husband Was to Convey Her*
    *Legal Title, Has Sole Equitable Title as Against Husband's*
    *Judgment Creditors; Wife May Set up Equitable Title*
    *Against Husband's Judgment Creditors, Except on Show-*
    *ing of Credit to Husband on Faith of Apparent Ownership.*

    Where land is purchased with the wife's money, but by
    mistake of the grantor the deed is made to the husband and
    wife jointly and tendered to the wife, and she accepts it
    only with the understanding that the husband is to convey
    to her the legal title thus vested in him, he claiming no in-
    terest in the property, the wife is vested with the sole equit-
    able title to the property as against the husband's judgment
    creditors; and in a suit by one of such creditors to enforce
    his judgment lien against the husband's alleged undivided
    one-half interest in the land, the wife will not be estopped to
    set up such title by permitting the legal title to remain in
    their joint names unless it appears that credit was extended
    to the husband on the faith of his apparent ownership in
    the land.   (p. 274.)

    (Husband and Wife, 30 C. J. § 487; Trusts, 39 Cyc. p. 138.)

2.  JUDGMENT—*In Absence of Statute, Judgment Creditor Ac-*
    *quires Only Judgment Debtor's Rights to His Property;*
    *in Absence of Statute Judgment Creditor's Lien on Judg-*
    *ment Debtor's Estate is Limited to Debtor's Actual Interest.*

    Where statute enactments do not interfere, a judgment
    creditor can acquire no better right to the estate of the debtor
    than the debtor himself had when the judgment was recovered,
    and his lien will be limited to the actual interest of the judg-
    ment debtor in the property.   (p. 275.)

    (Judgments, 34 C. J. § 903.)

    (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not
    part of syllabi.)

Appeal from Circuit Court, Roane County.

Suit by David Eagle against I. H. McKown and others.

From a decree for plaintiff, defendant Jennie McKown appeals.

*Decree set aside; dismissed as to the appealing defendant, but otherwise affirmed.*

*S. P. Bell,* for appellant.

MILLER, PRESIDENT:

The purpose of this suit was to enforce plaintiff's judgment against the defendant I. H. McKown, by a sale of Mc-Kown's alleged one-half interest in a tract of land. From a decree of sale, the defendant Jennie McKown, the wife of I. H. McKown and the claimant of the sole ownership in the property, prosecutes this appeal.

The bill alleges that the plaintiff secured a judgment against I. H. McKown on November 29, 1921; that at that time and for some time thereafter the said McKown was the owner of an undivided one-half interest in a tract of seventy-three acres of land which had been conveyed to him and Jennie McKown by Mary Summers and J. V. Summers, her husband, by deed dated February 24, 1921; that on November 10, 1922, these defendants conveyed the whole of the tract to the defendant Dorothy Noe, their daughter; that plaintiff was informed and believed that the purchase money notes made by the McKowns to Mary Summers had been paid off and the vendor's lien securing the same satisfied, or if not, that the purchase money paid by I. H. McKown was in excess of one-half the total purchase price, in which event his interest should be sold free from the lien retained by Mary Summers.

Mary Summers answered the bill, alleging that of the $950.00 represented by the purchase money notes, but $200.00 had been paid; that upon her information and belief the defendant I. H. McKown never owned any interest in the land conveyed by her; that it was through a mistake of her husband, J. V. Summers, who prepared the deed, that the name of I. H. McKown was inserted therein as one of the grantees; that she was informed and believed that the team of horses

representing the $500.00 cash payment on the land was the sole property of Jennie McKown, and that the $200.00 paid on the purchase money notes was paid by her out of her own means and property. Mary Summers did not pray to have her lien enforced against the land, but only to be dismissed from the suit, with her reasonable costs, etc. Only a part of the unpaid purchase money notes were due at that time.

By her answer Jennie McKown denied that her husband had any interest in the land, and explained in detail the transactions concerning the purchase thereof; that J. V. Summers, a resident of Nicholas county, came to her home, which was about a mile distant from the seventy-three acre tract of land, and offered to sell the same for $1,450.00, and to take as a cash payment of $500.00 a team of horses, the balance of the consideration to be paid in yearly installments of $200.00 each, except the last installment to be $150.00; that she agreed to these terms provided her step-son P. C. McKown, who owned one of the horses, would agree to allow her to put in his horse as a cash payment on the land; that later Summers returned to her home with a deed signed and acknowledged by Mary Summers and himself; that she objected to her husband's name as one of the grantees, but that she accepted it, when Summers explained she could have it corrected by her husband making a deed to her, because it would require some time for Summers to make a trip home and have a new deed executed; that her husband later went to a justice of the peace to have a deed prepared transferring the sole title to her; that the justice explained this would have to be done through some third party, and prepared a deed from her and her husband to Dorothy Noe, and one from Mrs. Noe to her, which were promptly executed; that the deed to Dorothy Noe was placed on record, but that the deed to respondent had not been put on record; that she had paid but one of the purchase money notes, and obtained the money to take this one up from her father; and she prayed to be dismissed from the suit.

Upon the bill, answers, general replication to each, and the depositions taken and filed on behalf of the defendant Jennie McKown, over the objection of Mrs. McKown, the

circuit court referred the cause to a commissioner, who found that the defendant I. H. McKown was the owner of an undivided one-half interest in the seventy-three acre tract, that the vendor's lien reserved by Mary Summers and husband was a first lien on all the property in the amount of $648.83, and that plaintiff's judgment was a second lien thereon. The court overruled Jennie McKown's exceptions to the commissioner's report, and entered a decree in accordance therewith, ordering a sale of the land.

The plaintiff took no exceptions and filed no evidence in the cause. The defendant Jennie McKown filed the depositions of herself, her husband, J. V. Summers, P. C. McKown, Dorothy Noe, A. S. Reynolds, the justice of the peace who prepared the two latter deeds mentioned in the answer, and other witnesses with whom she had had transactions in regard to the money used in the purchase of the horses given as part consideration for the farm. There is no evidence that I. H. McKown contributed any money or other property in the purchase of the land. It is true he signed the deferred purchase money notes, and the note given to Mrs. McKown's father at the time the money was borrowed from him to pay one of the original notes. Mrs. McKown explains where and how she got the money to pay for the horse she claims to have owned when she purchased the property. P. C. McKown testified that he turned the other horse over to his step-mother to be applied on the purchase price of the land, in order to assist in securing a home for her and the children. J. V. Summers testified that he made the deal with Mrs. McKown; that it had always been customary with him to make joint deeds, and that he gave the lawyer who wrote the deed the names of Mr. and Mrs. McKown; that Mrs. McKown objected to taking the deed in the form it was presented to her, and refused to do so until he explained to her that her husband could deed the one-half interest to her; that he had both parties sign the notes because the deed was made jointly to them; and that he offered to pay the expense of having a new deed made. Mrs. McKown explains the delay in having the transfer of the title to the half interest from her husband to herself made, that they did not know how to proceed, and it was some distance from their

home to the county seat where they could obtain the necessary information. She says she did not have the deed from Dorothy Noe to herself recorded, because she did not have the money for the recording fee at the time the other deed was admitted to record, and afterwards just neglected to do so.

It appears from the testimony of I. H. and Jennie McKown that Mrs. McKown expected to secure the greater part of the money to pay for the land from her father, now deceased, and that he had told his daughter he would help her buy a farm.

There is no evidence that I. H. McKown contributed anything whatever to the purchase of the land, or that he ever claimed any interest in it. No fraud is alleged or attempted to be proved. Plaintiff appears to rely wholly on I. H. McKown's apparent ownership of a half interest in the property. This theory is not supported by the evidence; and any presumption arising from the fact that I. H. McKown's name appears in the deed, is overcome by the evidence.

Even ''when a husband purchases property with his wife's money and takes the deed in his own name, a resulting trust is raised in her favor; unless it is shown that she intended the money as a gift or loan to her husband, the establishment of which fact devolves on the husband or those claiming under him.'' *Berry* v. *Wiedman,* 40 W. Va. 336; *Hummel* v. *Marshall,* 95 W. Va. 42. And in *Standard Mercantile Company* v. *Ellis,* 48 W. Va. 309, it was held: ''Where property has been purchased with the wife's money, and without her knowledge or consent, the deed is made in the husband's name, a resulting trust arises in her favor, which will be enforced in a court of equity.''

In this case there are no facts appearing tending to show a gift or loan to the husband; and while the wife accepted the deed with knowledge that her husband was named therein as a grantee, she only consented to accept the same with the understanding that the title could readily be transferred to her, and that the insertion of the husband's name was by mistake of the grantor. The fact that the husband signed the deferred purchase money notes argues nothing. J. V. Summers explains why he asked for both names to the notes. In

the *Ellis* case the plaintiff brought suit against Ellis and others to enforce judgment liens against a house and lot, title to which appeared to be in the name of Ellis. It was held that Mrs. Ellis established the fact that she was the owner of the property, which had been purchased with her money; and the land was decreed to her, free from the judgment liens.

Here, as in that case, it clearly appears that credit was not extended to the plaintiff on the strength of McKown's paper title to the land. Plaintiff could not be prejudiced by a finding that McKown had no interest in the property. And in the *Ellis* case it was held: ''The wife will not be estopped from setting up such trust by permitting the legal title to remain in the husband's name unless it appear that credit was knowingly extended to the husband on the faith of his apparent ownership.'' There is no evidence that McKown ever held himself out as claiming any interest in the farm. It appears that he did not even farm the land, but was engaged in some other occupation.

Where statute enactments do not interfere, a judgment creditor can acquire no better right to the estate of the debtor than the debtor himself had when the judgment was recovered; and his lien will be limited to the actual interest of the judgment debtor in the property. *Snyder* v. *Botkin*, 37 W. Va. 355; *Mercantile Co.* v. *Ellis, supra.* And where land has been conveyed to two persons jointly, parol evidence is admissible to prove the interest of each therein. *Smith* v. *Anderson*, 116 Va. 986.

From the evidence it appears clearly that I. H. McKown had no interest in the property in question, and that the understanding of all the parties to the transaction was that Jennie McKown purchased the farm with her own money and on her own credit.

From the record it appears that plaintiff's judgment was a joint one against I. H. McKown, Lawrence Short, and Samuel King. The bill in the present suit makes them and John M. Baker, Trustee, parties defendant, and prays that a tract of land owned by Short and covered by a deed of trust to Baker, Trustee, to secure a loan made by King to Short, as well as

the McKown land, be sold in satisfaction of the judgment. None of the parties except Mrs. McKown have appealed.

Therefore, the decree of the circuit court will be set aside as to Jennie McKown and dismissed as to her, but will not be disturbed as to the other parties defendant.

*Decree set aside; dismissed as to the appealing defendant, but otherwise affirmed.*