## ASHBURN *v.* SPIVEY.

A deed executed and duly recorded prior to the date of the passage of the " re-recording act of 1883," and the record of which was destroyed before that date, did not lose its priority over a deed executed by the same grantor after that date, merely because the grantee in the older deed did not avail himself of the privilege of having the same again recorded in accordance with the provisions of that act.

Argued December 7, — Decided December 20, 1900.

Equitable petition. Before Judge Hansell. Colquitt superior court. April term, 1900.

*Pearsall & Shipp* and *Covington & Smithwick*, for plaintiff.
*Mitchell & Mitchell, McKenzie & McKenzie,* and *J. H. Merrill,* for defendant.

LUMPKIN, P. J. This case turns upon the question whether or not a deed dated April 15, 1856, and duly recorded on May 28 of the same year, lost its priority over a subsequent deed, dated December 3, 1896, and recorded February 11, 1897, merely because the book in which the former deed was recorded was destroyed by a fire occurring in 1881 and the grantee failed to have his deed re-recorded within twelve months from the passage of what is known as the "re-recording act of 1883," the title of which is as follows: "An act to make it legal and valid for any clerk of the superior court in this State to record the second time any deeds or mortgages, or other instruments of record, and the certificate of record, when the

record of such deeds, etc., are lost or destroyed by fire, and to make such re-recording as legal and valid as the first recording would have been, and for other purposes." Acts of 1882–3, p. 148. The title of this act sufficiently indicates what appears in the body thereof. We agree with his honor of the trial bench in holding that the older deed was entitled to preference. It is absolutely certain that its priority was not lost merely because of the burning of the record book, and equally certain that if the act of 1883 had not been passed, the priority of that deed would have remained beyond question. What, then, is a proper interpretation of the statute referred to, as applied to a case of this kind? It will be observed that neither in the title nor in the body of the act is an intention manifested to impose any penalty for a failure to have a deed re-recorded. Certain it is, that the act does not undertake to declare that, because of such failure, a deed the record of which has been lost or destroyed will be postponed to a younger deed duly recorded. We have no authority to read into the statute a provision which it does not contain, or by construction give it the effect contended for by counsel for the plaintiff in error, when there is in it no language to warrant so doing. The more especially is this so because pursuing such a course would be giving to the law a meaning and effect not even hinted at in the title.

Prior to the enactment of this statute there was, so far as we are informed, no authority for re-recording a deed which had once been properly placed upon record. There are many reasons why the holder of a deed the record of which had been lost or destroyed might desire to have it again recorded. For instance, as suggested in the opinion filed by the trial judge in this case, the purpose of the act may "have been to permit parties to have deeds recorded again when the first record had been destroyed, and thus provide a means of securing a record which could be used in case of loss of the original deed and the previous record." Furthermore, the General Assembly may have contemplated that to permit such deeds to be re-recorded might prevent the holders thereof from being involved in litigation instituted to test the sufficiency of their titles, which would of itself be a great inducement to them to avail themselves of the provisions of the act, while as a further result of their so doing many persons would be protected from loss who

otherwise might be misled into purchasing property from persons other than the true owners.

Without such an act, a clerk of the superior court would have no authority to re-record an instrument. After the passage of the act he could be required to do so; but we can not gather from its terms that its purpose was to make it obligatory upon the holder of a deed once duly recorded to re-record the instrument in the event of the loss or destruction of the original record thereof.

*Judgment affirmed. All the Justices concurring.*