RICHARD B. FISHER

*v.*

CHARLES A. REAMER, *et al.*

(CC 859)

Submitted January 11, 1961. Decided February 7, 1961.

*Roger J. Perry,* for plaintiff.

*Avey & Steptoe, Robert M. Steptoe,* for defendants.

CALHOUN, JUDGE:

The plaintiff, Richard B. Fisher, instituted a suit in the Circuit Court of Jefferson County to enforce a mechanic's lien pursuant to the provisions of Article 2 of Chapter 38, Code, 1931, as amended. Process commencing the suit was issued on June 7, 1960, returnable to July rules. After July 1, 1960, the effective date of the new rules of civil procedure for trial courts, the suit proceeded as an "action" in accordance with the provisions of such rules. Subsequently, Charles A. Reamer and Barbara W. Reamer, two of the four defendants, the owners of the property upon which the lien is asserted, made a motion to "dismiss the action because the complaint fails to state a claim against them upon which relief can be granted", for reasons or upon grounds which will be stated subsequently herein.

By an order entered on August 16, 1960, the court held that such motion was "not well taken", and, accordingly, it was "denied". By the same order the court certified to this Court, pursuant to Code, 58-5-2,

certain questions relating to the sufficiency of the complaint, which questions arose upon the motion to dismiss. By the same order a written opinion rendered by the trial court was made a part of the record.

On or about June 1, 1959, Charles A. Reamer and Barbara W. Reamer, husband and wife, then and thereafter residents of Arlington, Virginia, employed Wood Builders, Inc., to construct for them a cottage upon a lot in Blue Ridge Acres, a resort development in Jefferson County, West Virginia, which lot the Reamers were then purchasing from Blue Ridge Acres, Inc., upon an executory contract of sale and purchase. Wood Builders, Inc., the general contractor, subsequently engaged the plaintiff, Richard B. Fisher, as a subcontractor to furnish and install a general plumbing system for the cottage for an aggregate consideration of $736.50.

The motion to dismiss the complaint is based on two grounds, which are embodied in the following questions certified to this Court for decision:

> "First: Whether a subcontractor, in order to perfect his mechanic's lien against a nonresident owner in accordance with Section 15, Article 2, Chapter 38 of the Code of West Virginia, must commence publication of his notice within sixty days after completion of his subcontract.

> "Second: Whether a subcontractor's mechanic's lien against real estate of nonresidents is perfected when the subcontractor himself serves notice of his mechanic's lien upon the nonresident owners."

In relation to the first question the trial court held that under the provisions of Code, 38-2-15, the subcontractor was permitted ninety days from the date of completion of his contract within which to commence the publication of notice to the nonresident owners. In relation to the second question certified the trial court pointed out that, in view of its ruling on the first proposition, a decision of the latter question was unnecessary; but the court, nevertheless, stated in its

written opinion "that the personal service upon the defendants is defective and will be quashed."

The statutes of this state relating to mechanic's liens are found in Article 2 of Chapter 38 of the Code. Portions thereof, with italics supplied, are quoted below. Section 1 provides for a lien in favor of a general contractor. Section 2 provides for a lien in favor of a subcontractor. Section 7 is, in part, as follows: "But the lien created and authorized by section one of this article shall be discharged from and after *ninety days* from the completion of such contract, and the lien created and authorized by section two of this article shall be discharged from and after *sixty days* from the completion of such subcontract, * * * unless within such respective periods, the claimant of any such lien shall have perfected and preserved the same, as hereinafter provided in this article." Section 8 provides: "For the purpose of perfecting and preserving his lien, any such *general contractor* as is mentioned in section one of this article shall, within *ninety days* after the completion of his work provided for in such contract, *cause to be recorded,* in the office of the clerk of the county court of the county wherein such property is situate, a notice of such lien, which notice shall be sufficient if in form and effect" as therein prescribed. Section 9 provides:

"For the purpose of perfecting and preserving his lien, every such *subcontractor* mentioned in section two of this article shall, within *sixty days* after the completion of his subcontract, *give to the owner or his authorized agent, by any of the methods provided by law for the service of a legal notice or summons, a notice of lien* * * *.

"But such lien shall be discharged and avoided, unless within *ninety days* after the completion of his subcontract as aforesaid such subcontractor shall *cause to be recorded* in the office of the clerk of the county court of the county wherein such property is situate a notice of such lien, * * *."

Section 27 is, in part, as follows: "It shall be the duty of the clerk of the county court of the county to *enter*

every notice of lien mentioned in this article upon the *filing in his office* of such notice in a book by him to be kept for that purpose, * * *.'' Section 15 deals with publication of notice to the owner of the real estate or improvement on which a lien is sought when such owner is a nonresident of the state or is not found, and it provides that it shall be sufficient under such circumstance ''to publish a copy of such notice for two successive weeks in some newspaper of general circulation in the county wherein the real estate lies, and to post a copy of such notice in a conspicuous place upon the property sought to be charged thereby, which publishing and posting shall be sufficient, *if commenced within the period provided by this article for the filing of such notice. * * *.*'' The time permitted to the plaintiff for the publication and posting of notice to the nonresident owners depends upon the proper construction of the phrase, ''within the period provided by this article for the filing of such notice.''

The plaintiff completed his work on October 3, 1959. The plaintiff himself served notice in person on Charles A. Reamer and Barbara W. Reamer, the property owners, in Virginia, on November 26, 1959, which was, of course, within sixty days after the completion of the plaintiff's work as subcontractor. On December 1, 1959, a true copy of the notice of mechanic's lien was posted in a conspicuous place upon the premises and a copy of such notice was published in a newspaper of general circulation in Jefferson County for two successive weeks, commencing on December 3, 1959. While the posting was done within sixty days after the completion of the plaintiff's work, it is conceded that the publication was commenced on the sixty-first day. On December 17, 1959, the plaintiff caused a proper notice of mechanic's lien to be recorded in the office of the Clerk of the County Court of Jefferson County. In other words, notice was served personally by the plaintiff on the property owners in Virginia within sixty days; the posting was within sixty days; the publication was commenced later than sixty days, but

within ninety days; and the notice was duly recorded in the office of the clerk of the county court within ninety days.

Counsel for the plaintiff takes the view that the phrase "the period provided by this article for the filing of such notice", refers to the ninety-day period permitted by section 9 for the recordation of the notice in the office of the clerk of the county court; and that the word "filing", as thus used, is synonymous with and the equivalent of the word "recording". This also represents the basis of the trial court's decision. Counsel for the defendant property owners on the other hand, insists that the language in question refers to the sixty-day period permitted to the subcontractor by Section 9 to "give to the owner * * * a notice of such lien." Counsel for the property owners insists further that Article 2, considered in its entirety, discloses an overall purpose and legislative intent to give the general contractor a period of ninety days within which to perfect his lien and to a subcontractor a period of but sixty days; and that the basis of such legislative intent is the protection of the property owner by affording him an opportunity to be fully advised of all claims of subcontractors before he is required to make final payment to the general contractor. Counsel for the plaintiff, on the other hand, insists that no such legislative intent is apparent from the whole of Article 2.

In perfecting his lien, the claimant of the lien is required to comply only substantially with the pertinent statutory provisions. Code, 38-2-4; *Gray Lumber Co. v. Devore*, 145 W. Va. 91, 112 S. E. 2d 457; *Dickerson v. Paul*, 95 W. Va. 581, 122 S. E. 270; *U. S. Blowpipe v. Spencer*, 61 W. Va. 191, 56 S. E. 345; *Rainey v. Coal and Coking Co.*, 58 W. Va. 381, 52 S. E. 473; *Mayes v. Ruffners*, 8 W. Va. 384. "Where there is a clear right to a mechanic's lien under the statute and the controversy is whether the lienor has properly proceeded to perfect and preserve his lien, a liberal construction should be applied." *Pfaff & Smith Build-*

*ers Supply Co. v. Mason,* 103 W. Va. 318, pt. 1 syl., 137 S. E. 356. See also *Georgia Lumber Co. v. Harrison Const. Co.,* 103 W. Va. 1, 136 S. E. 399. "Mechanic's lien statutes must be strictly construed with reference to those requirements upon which the right depends." *The Scott Lumber Co. v. Wheeling Cemetery Assn.,* 117 W. Va. 534, syl., 186 S. E. 117. In the case of *Bailey Lumber Co. v. General Construction Co.,* 101 W. Va. 567, 577, 133 S. E. 135, 139, the Court stated: "Some of the courts say that mechanic's lien laws should be strictly construed; while others say they should be liberally construed. The better view is given in *Cary Hardware Co. v. McCarty,* 10 Colo. App. 200, to the effect that whether a particular case is within the statute a strict construction should be applied; but where it appears from the case that there is a clear right to the lien under the statute and the controversy is whether the lienor has properly proceeded to establish his lien, a liberal construction should be applied." See also 57 C.J.S., Mechanic's Liens, Section 4, pp. 499-503.

In order to determine the meaning of the phrase "within the period provided by this article for the filing of such notice", we are expressly directed thereby to consider other pertinent provisions of the mechanic's lien statutes found in Code, 38-2. Even in the absence of such directive contained in the language of the statute being construed, it is fundamental that statutes relating to the same subject, whether enacted at the same time or at different times, must be read and construed together. *Chesapeake & Potomac Telephone Co. of W. Va. v. City of Morgantown,* 144 W. Va. pt. 4 syl., 107 S. E. 2d 489; *State ex rel. Graney v. Sims,* 144 W. Va. 72, 105 S. E. 2d 886; *State ex rel. Schroath v. Condry,* 139 W. Va. 827, 83 S. E. 2d 470.

As has been stated previously herein, Section 9, relating to liens of subcontractors, provides that in order to perfect and preserve his lien "every such subcontractor * * * shall, within sixty days, after the

completion of his subcontract, *give* to the owner or his authorized agent * * * notice of such lien." (Italics supplied.) By similar language Section 11, relating to the lien for supplies furnished to a contractor, provides that every claimant of such lien shall "give" to the owner a notice of such lien. Section 13, relating to the lien of a mechanic or laborer working for a contractor, provides that the claimant of the lien "shall cause to be given" notice to the owner. Counsel for the defendant landowners in this case contends that the sixty-day period required in these three sections for the claimant to "give" or to "cause to be given" notice to the owner is the period referred to in the language of Section 15, "the period provided in this article for the *filing* of such notice." (Italics supplied.)

The distinguished trial judge pointed out in his written opinion that by Chapter 6, Acts of the Legislature, Regular Session, 1917, Chapter 75 of the Code of 1913, relating to mechanic's liens was amended and reenacted; and that in each instance in which the Code of 1913 provided for *filing* with the owner a notice of mechanic's lien, such language was changed by the 1917 amendment and reenactment to provide, as in the present statutes, that the lienor shall *give* to the owner, or his authorized agent, a notice of such lien by any of the methods provided by law for the service of legal notices or summonses. This deliberate substitution of language can not, we believe, be regarded as insignificant, particularly when we observe that other provisions of Article 2 employ language which appears to intend the language, "cause to be recorded in the office of the clerk of the county court," to be synonymous with the equivalent of *filing* notice in the office of the clerk of the county court for the purpose of recordation therein. For instance, a portion of Section 27 is as follows: "It shall be the duty of the clerk of the county court of the county to enter every notice of lien mentioned in this article upon the *filing* in his office of such notice in a book by him to be kept for that purpose * * *." (Italics supplied.) Section 32

commences as follows: "Such lien shall be discharged unless the person desiring to avail himself thereof * * * shall *file* with the clerk of the county court * * *." (Italics supplied.) Section 34 is, in part, as follows: "Unless a suit in chancery to enforce any lien authorized by this article is commenced within six months after the person desiring to avail himself thereof *shall have filed his notice* in the clerk's office, as hereinbefore provided in this article, such lien shall be discharged; * * *." Section 36 provides: "When a debt secured by any lien mentioned in this article is fully paid at any time after the lien creditor *shall have filed his notice of such lien* in the office of the clerk of the county court," such creditor or his assignee shall cause the lien to be released as therein prescribed. (Italics supplied.)

None of the statutory provisions referred to above provides for "filing" such notice with the owner in the sense of giving him a sixty-day notice; but, as has been pointed out immediately above, four several sections provide for "filing" the notice with the clerk of the county court for purposes of recordation, and Section 27 specifically makes it the duty of the clerk of the county court, upon the "filing" of the notice in his office, to record or "enter" such notice "in a book by him to be kept for that purpose, to be called 'Mechanic's Lien Record'". We conclude, therefore, that the language of Section 15, requiring publication and posting of notice to a nonresident owner or an unknown owner "within the period provided by this article for the filing of such notice," refers to the ninety-day period prescribed by Section 9 within which the subcontractor is required to "caused to be recorded * * * a notice of such lien."

The "filing" of an instrument with the clerk of the county court for purposes of recordation has, in other instances, been held by this Court to be tantamount to the recordation thereof. *Bank of Marlinton v. McLaughlin*, 123 W. Va. 608, 17 S.E. 2d 213. "As far as the rights of the purchaser are concerned, or

those of the persons to be protected by the recording of a paper, under our decisions, the paper is recorded as soon as it is properly lodged in the clerk's office, without regard to the books in which it may actually be spread." *Benson v. Wood Motor Parts Corporation,* 115 W. Va. 200, 203, 174 S. E. 895, 896. See also *Wethered v. Conrad,* 73 W. Va. 551, 80 S. E. 953; *Wagon Co. v. Hutton,* 53 W. Va. 154, 44 S. E. 135; *Fouse et al. v. Gilfillan,* 45 W. Va. 213, 32 S. E. 178. The opinion in the case of *Bailey Lumber Co. v. General Construction Co.,* 101 W. Va. 567, 577, 133 S.E. 135, 139, dealing with recordation of notices of mechanic's liens, contains language helpful in this connection, including the following: "We construe the words 'cause to be recorded' as meaning that a proper notice must be filed with the clerk whose duty it is to record it." As a matter of technical accuracy, a claimant of a mechanic's lien can not himself literally "record" a notice of lien, but rather he causes it to be recorded by *filing* it with the clerk, and the clerk is required, in a literal and mechanical sense, to record the notice or "enter" it in a book to be kept in his office for that purpose.

For the reasons stated herein, the Court is of the opinion that the plaintiff was, by Code, 38-2-15, permitted ninety days after the completion of his subcontract to commence the publication and posting of notice to the nonresident owners; that the publication and posting were therefore timely; and that the judgment of the circuit court in so holding must be affirmed.

Being of the opinion that the publication and posting of notice were timely, it is unnecessary for us to decide, and we do not decide, whether the notice served personally by the subcontractor upon the owners in Virginia, supplemented by his affidavit of service, constituted valid notice to them within the meaning of Section 9. Reference is made, however, to *Means v. Kidd,* 136 W. Va. 514, 67 S. E. 2d 740, which discusses the legal nature of a notice of mechanic's lien,

and to the following cases which may have a tendency to support the validity of a notice of this nature, having no direct bearing upon judicial proceedings, even when served by the lienor. *In re Danville Hotel Co., Inc.,* (Ill.) 33 F. 2d 162, affirmed 38 F. 2d 10; *Nicolai-Neppach Co. v. Poore,* 120 Ore. 163, 251 P. 268; *State ex rel. Weber v. McLaughlin,* (Mo.) 157 S. W. 2d 800; *Windolph v. Joure,* 323 Mich. 1, 34 N. W. 2d 529; *First National Bank of Whitewater v. Estenson,* 68 Minn. 28, 70 N.W. 775; *Dusick v. Meiselbach,* (Wisc.) 95 N.W. 144; *Fehling v. Goings,* 67 N.J.E. 375, 58 A. 642; *The Fruin-Bambrick Construction Co. v. Jones,* 60 Mo. App. 1, 4.

For the reasons stated herein, the ruling of the Circuit Court of Jefferson County is affirmed.

*Ruling affirmed.*