# CHARLESTON.

ALLIE WRIGHT *v.* P. A. GOINS, *Admr. et al.*

(No. 6046)

Submitted March 6, 1928.     Decided March 13, 1928.

APPEAL AND ERROR—BILLS AND NOTES—*Decree Based on Conflicting and Doubtful Evidence·Will Not be Disturbed, Except for Clear and Palpable Error; in Controversy Over Money Due on Note Paid Into Court, Evidence Held to Support Decree for One Claimant.*

A decree based on conflicting and doubtful evidence will not be disturbed by the appellate court except for clear and palpable error.

(Appeal and Error, 4 C. J. § 2870; Bills and Notes, 8 C. J. § 1363.)

(NOTE: Parenthetical references by. Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Mingo County.

Suit by Allie Wright against P. A. Goins, administrator of the estate of Charles Fullen, deceased, and others. From a decree for plaintiff, the named defendant appeals.

*Affirmed.*

*Stafford & Copley,* for appellant.
*B. L. Damron,* for appellee.

MILLER, PRESIDENT:

From a decree in favor of the plaintiff pursuant to the prayer of her bill, the defendant P. A. Goins, administrator of the personal estate of Charles Fullen, prosecutes the present appeal.

Under date of June 26, 1924, the defendant S. C. Williams executed his negotiable note, payable one year after date, to Charles Fullen and Allie Wright, for the sum of six hundred dollars. To secure the payment of the note, Williams, his wife joining therein, executed a deed of trust, of even date with the note, which was acknowledged July 28, 1924, and admitted to record March 2, 1925. Fullen died January 12, 1925. A dispute having arisen between plaintiff and the administrator as to who actually loaned the money to Williams, he deposited with the defendant, the National Bank of Commerce of Williamson, his certified check for the sum represented by the note, with interest, to be delivered to the payees or either of them, upon receipt of the note and a proper release of the deed of trust. Both parties were claiming the whole of the six hundred dollars, and each refused to execute a release unless the money was paid to him or her. The plaintiff filed her bill praying that the money in the hands of the bank be decreed to her. The administrator by his cross-bill answer asked for a decree of the money to him.

Plaintiff claims that she made the loan to Williams from her own money. She testified that he came to her home, where Fullen roomed, and told her that he would lose his home unless she or Fullen loaned him six hundred dollars; that she told him she would let him know about a loan when Fullen came home; that later he returned when Fullen was there, and that Fullen refused to make the loan "couldn't let him have the money—not a dime"; that she then told him she would loan him the money if his property was worth enough to secure the loan. She says she had a lawyer look into the property and prepare a deed of trust, and gave Williams six

hundred dollars in cash, her own money. Her testimony is substantially corroborated by Williams. He says Fullen refused to let him have the money, and that plaintiff loaned him the six hundred dollars—gave it to him in cash. He says that the reason the note and deed of trust were made to secure both plaintiff and Fullen was because Mrs. Williams and plaintiff were not on good terms and it was thought best to connect Fullen's name with the loan.

To support his claim to the money, the administrator relies mainly on two alleged facts in evidence. A bookkeeper of the bank where Fullen did his banking business testified that on June 27th, the day following the date of the note, Fullen's account was charged with an item of $600.00. To whom this check was made payable does not appear. The witness Armstead testified that in September 1924 Fullen applied to him for a loan of $200.00, which was made, stating as a reason for wanting the money that he had to go to a hospital, and that he did not have money enough at the time because he had loaned Sam Williams six hundred dollars before he knew he would have to go to the hospital. The bank's bookkeeper testified that Fullen had on deposit in the bank $507.62 all during the month of September. Goins says he was present when Fullen applied to Armstead for the loan.

No question is raised here as to the competency of the testimony introduced. Each party relies on evidence of dealings and conversations with the deceased. And neither party relies on the presumption raised by the fact that the note and deed of trust were made in the names of both Fullen and the plaintiff, each claiming all of the six hundred dollars.

The testimony of plaintiff and Williams is positive, that plaintiff made the loan to Williams after Fullen had refused to do so. Their explanation of their reason for including in the note and deed of trust both names is perhaps sufficient. Mrs. Williams testified that she had gone ''to Miss Wright's home one day and asked her not to let Sam to come to her house so often.'' There is no attempt to explain why Fullen's account was charged with $600.00 the day following the date of the note, or why he needed the $200.00 said to have been

loaned him by Armstead, when he had on deposit in the bank the sum of $507.62.

A decree based on doubtful and conflicting evidence will not be disturbed by the appellate court except for clear and palpable error.  *Frederick* v. *Frederick,* 31 W. Va. 566; *Yoke* v. *Shay,* 47 W. Va. 40; *Ross* v. *McConnaughy,* 85 W. Va. 199; *Baughman* v. *Hoffman,* 90 W. Va. 388; *Walton* v. *Pruit,* 93 W. Va. 375; *Lumber Company* v. *Paul,* 95 W. Va. 581. And this rule will prevail ''though such court might have rendered a different decree had it acted in the cause in the first instance.'' *Ross* v. *McConnaughy, supra.*

In view of this rule and the conflicting and unsatisfactory character of the evidence in the record before us, we can not disturb the finding of the circuit court; and the decree will be affirmed.

*Affirmed.*